MoKiuNey, J.,
delivered the opinion of the court.
This bill was brought to annul a marriage entered into, under all the forms of law, between the defendants, John and Mary Clarke, on the ground that said marriage was contracted, not in good faith, but for the sole purpose of defeating the rights of the complainant, who was a judgment’ creditor of said Mary prior to the marriage.
It appears that the defendant Mary, for several years prior to her marriage with defendant, John Clarke, was the widow of Cornelius Sullivan, who died in 1846. By his last will and testament, said Cornelius devised and bequeathed to said Mary, a plantation and six slaves, “ ckvring h&r nakural life or widowhood,” with remainder to his children.
Some time prior to the marriage between said Mary and defendant Clarke, the complainant recovered several *322 judgments against said Mary in her own right, and caused executions to be issued tbereon, which were levied upon said tract of land and slaves,'held by her under the foregoing clause of her former husband’s will.
After the levy, and shortly before the day appointed for the sale of said property, said Mary intermarried with the defendant Clarke. The marriage, in point of form, was solemnized in accordance with the prescribed ceremonies of the law, and with the mutual consent of the parties, both of whom were sm jwris, and possessed of competent capacity to contract. But it is placed beyond all doubt, from the proof in the cause, that the main, if not the sole, inducement to the marriage, on the-part of said Mary, was to put an end thereby to the estate vested in her during widowhood, under the before mentioned will, so as to defeat the complainant’s levy and the recovery of his debt. The motives and conduct of said Mary, in forming this matrimonial alliance, are of a character, as exhibited in this record, to shock the moral sense of the community, and to outrage all the decencies of social life. It is probable from the proof, that she has not, in fact, and perhaps never intended to co-habit with said Clarke, who is proved to be a drunken sot, degraded in reputation and loathsome in appearance and habits. These, and other facts established in the proof, leave no doubt upon the mind that the object of the marriage was to defeat the rights of the complainant. ' Still, however, the parties themselves acquiesce in the marriage; profess to regard it as valid; recognize each other as husband and wife; and insist that there attaches to it all the legal rights, obligations and consequences resulting from that relation.
*323 Tbe bill seeks to annul tbe marriage, and to subject tbe property to tbe satisfaction of tbe complainant’s judgments, as if no sucb pretended marriage bad taken place.
Tbe chancellor decreed .tbe marriage void, so far as respects tbe rights of tbe complainant, and ordered tbe interest of defendant Mary, in tbe property (which tbe decree assumes to be a Ufe estate) to be sold for tbe satisfaction of complainant’s debt. From this decree tbe defendant’s (including tbe persons who claim tbe estate in remainder under tbe will) have presented an appeal in error to this court.
This is a novel case. Tbe books to which we have bad access have béen searched in vain for a parallel. But, upon principle, it presents no difficulty.
Tbe jurisdiction of a court of equity to annul a marriage, on the ground of frond, at the instance of one of the po/rbies to tbe marriage contract, is a question which, as it does not arise upon this record, we will not at present discuss.
Tbe question before us is, whether a court of equity has any jurisdiction to entertain a bill, brought by a stranger to tbe contract, to annul a marriage entered into by tbe mutual assent of parties capable of contracting, and valid according to tbe forms' of municipal law, merely upon tbe ground, that tbe motive of tbe parties in contracting sucb marriage was to defeat, and that in its legal consequences it may defeat, some right or remedy of sucb third person, which otherwise might have been asserted? This question can admit of no debate.
Marriage is emphatically a personal contract, and its basis is tbe mutual consent of tbe parties. But, in tbe language of Mr. Story, (Confi. of Laws, p. 100, note 3,) *324 “ it is something more than a mere contract. It is rather to be deemed an institution of society, founded upon the consent and contract of the parties; and in this view has some peculiarities in its nature, character, operation, and extent of obligation, different from what belong to ordinary contracts.”
Unlike other contracts, it is indissoluble between the parties. When consummated according to law, it is of perpetual obligation, and cannot be renounced at the will of either or of both parties. It continues to exist until a dissolution is produced either by the death of one of the parties, or by a divorce. 2 Bl. Com., 440; 2 Kent Com., 94. It differs in another respect from all other contracts; the rights and duties growing out of it, are not left to the option or agreement of the parties; but, to some extent, are matters of municipal regulation, over which the will of the parties can have no control. Sto. ConfL, p. 101. It continues to subsist in full force, even although one of the parties should be rendered incapable forever of performing his or her part of the mutual contract, as in case of incurable insanity, or the like. Id.
Such is' the nature of the contract of marriage; an institution which lies at the very foundation of all social order and morality, and constitutes the chief corner stone of the whole structure of civilized society.
The contract of marriage, then, having its foundation in nature, and resting, in its origin, xxpon the mere consent and mutual agreement of the parties, when complete according to civil regulations, becomes indissoluble, . except by death or divorce; and so long as the relation is acquiesced in by the 'immediate parties, no tribunal on earth is clothed with the jurisdiction to interpose to annul it. No more startling or absurd *325 preposition, can be conceived, than that a marriage, legal in form, acquiesced in and teld obligatory by the parties, and recognized as valid by law, might be annulled at the instance of a third person, for any cause ■whatever. So far as regards the legal consequences resulting from marriage, either as respects the parties or third persons, it can be of no consequence what were the motives or inducements to the contract. The only inquiry, at least as to third persons is, does a marriage in fact exist according to the prescribed forms of law? If so, the motive which prompted to the marriage, or the consequences flowing from it, are wholly irrelevant, so far as relates to the validity or effect of such marriage.
If a marriage may be annulled for frcmd¡ it must be such a fraud as operates upon one or other of the immediate parties to the contract, - and has the legal effect of vitiating the contract. between the parties, db mit/io. But, as respects stremgers, fraud cannot be predicated of a contract which the immediate parties thereto may lawfully enter into, which no principle of municipal law forbids, or can restrain the consummation of.
From these obvious principles it results, that to entertain the present bill would be an usurpation of jurisdiction conferred upon no human tribunal; and which, consistently with the fundamental principles of society, never can be.
The interest of the defendant Mary, was an estate upon ’ condition; and her subsequent marriage with the other defendant, was an absolute forfeiture of that estate as to herself, her creditors, and all other persons. This forfeiture she might incur at pleasure; it depended solely upon her own volition and act; and no power, known to our law, could have restrained her from *326 doing so. It would be grossly paradoxical, then, to hold that a forfeiture lawfully incurred, could be relieved against; or, that a court of equity, though powerless to prevent the forfeiture by restraining the marriage, had nevertheless the jurisdiction to relieve against the consequences of such forfeiture.
But it is needless to pursue this discussion further, as the want of all such jurisdiction admits of no question.
The decree will be reversed, and the bill be dismissed.